May it please the Court, I would like to reserve three minutes of my time for rebuttal. Just keep an eye on the clock and when it counts down, stop. Your Honor, the central question in suits seeking overtime pay in California is how does the employee actually spend his or her time? That inquiry is mandated by the very language of the wage order at issue 4-2001, which makes clear that the requirements of the administrative, executive, and professional exemptions are to be determined by analyzing, quote, whether an employee's duties meet the test to qualify for exemption. Here, the district court acknowledged at page 5, E.R. 5 of the record, that the facts about the job duties of the attest associates are in, quote, sharp dispute. Under the plain language of the wage order, that sharp factual dispute should have precluded some re-adjudication of non-exemption and the parties should have been put to their evidence in the trial court. But instead, the district court read a limitation into the wage order to categorically exclude thousands upon thousands of unlicensed professionals in the traditional professions, including law, medicine, engineering, and accounting, from even seeking eligibility for the professional exemption. Similarly, the court went beyond the language of the wage order to rule again as a matter of law that class members who are unlicensed CPAs cannot be administratively exempt regardless of their actual job duties. By misconstruing the wage order and by failing to consider the employee's actual job duties, the district court erred with both – both in regard to the professional and the administrative exemption. I'd like to turn to the professional exemption first because the language there is what we rely on. Before you do that, let me just make sure I understand the second issue. Would your position be that those attest associates who are in charge of an engagement are actually performing more administrative duties than they are audit duties? Is that one of the contested issues of fact? It is a contested issue of fact as to whether or not they are – they are performing duties that relate to the general business operations of the firm. We would say that all of the attest associates in the class perform such duties, not only those that are in charge. Okay. All right. Turning to the professional exemption, the district court's ruling that PwC cannot even attempt to qualify its attest associates as professionally exempt from overtime provisions was based on a construction of the wage order by which the court held that all employees working in the professions identified in subsection A of the – of the professional exemption can only qualify as professionally exempt under subsection A, the licensed professional prom. But the wage order does not say that. Indeed, the wage order – the words of the wage order are clearly to the contrary. The wage order appears at ER 69 to 79. The relevant portions are excerpted at pages 10 to 11 of the blue brief. And the wage order plainly states that, quote, any employee, end quote, is exempt if shown to meet the requirements of subdivision A or subdivision B. The use of the words any employee and the word or make clear that the wage order provides two distinct and alternative pathways to the professional exemption and that the two pathways are not mutually exclusive by profession as the plaintiffs argue. Subsection A, by its own terms, applies to any employee who is licensed or certified by the State of California and primarily engaged in the practice of one of eight professions. The wording of subsection A is employee-specific. It's limited to licensed professionals. Subsection A thus provides a streamlined path to exemption for licensed professionals, but its text does not affirmatively exclude any employee from being exempted under subsection B of the professional exemption. How many employees are we talking about? At Price Waterhouse, in the class, Your Honor, just about 2,000 on the head. Out of the 30,000 nationwide? Yes. This is a California class, so it is limited to attest associates, and those attest associates are not exempt. There are none that I would concede are not exempt of the attest associates, but there would be an obligation on us to prove that fact at trial, and we could, theoretically, succeed with respect to some and fail with respect to others. So under your argument, then, veterinarians are not listed in A. That is correct. So could they be included under B as included in the classification? Engaged in an occupation commonly recognized as a learned profession? Absolutely. Because B itself has no limitation as to what the profession would be. So your position is that the list under A may be exclusive with regard to the listed professions, but the reason that it's in the disjunctive as opposed to the conjunctive is that there are other learned professions that could also meet the task? No, that's precisely not our point. Our point is that A is limited to licensed employees in a specific category. So there are two factors that it does. I'm sorry. I didn't make my question very clear. Let's assume that a veterinarian is licensed by the State of California to. Still would need to come under B. Under B, okay. Absolutely. But if you're unlicensed, you could come under B even if you were in a profession that's within A. The words of subsection A cannot be read to provide an exclusive pathway to the professional exemption for everyone who is employed in any of the eight enumerated professions. There is absolutely no ambiguity in the language of subsection A. There aren't any words to seize on and debate their meaning. There is no need to resort to a dictionary. The words of subsection A are remarkably clear, and they are limited to licensed professionals. Subsection A has nothing to do with unlicensed professionals in any profession. Now, subsection B, in sharp contrast, the learned profession prong of the professional exemption found in subsection B, doesn't require a license in order to be professionally exempt. And nothing in the wording of subsection B says or implies that subsection B is inapplicable to employees in the professions enumerated in subsection A, as the plaintiffs argue. Now, even the district court acknowledged that fact at ER 31. Now, had the IWC intended that type of limitation, all it needed to do in defining learned or artistic profession in subsection B was to insert the words other than those professions identified in subsection A above. But they didn't put in any language like that. What they did put in is very important. They define what a learned or artistic profession is in subsection B, and they say learned or artistic profession means an employee who is primarily engaged in the performance of and then certain duties. So the IWC chose to define the professions by the nature of the work of the professional. Job duties are the touchstone of exemption. Tomash? Is that the way to pronounce your name? Tomash, Your Honor. Okay. What you want to do is to, I suppose, have a trial because of the disputed issues of fact as to whether the at-test associates fall within subsection B. Whether they satisfy the requirements of subsection B, specifically subsection B1 and 3. Yes, Your Honor. That is what we seek. Those are the contested issues, Your Honor. Well, those issues were contested as this case proceeded. But plaintiffs moved for summary judgment on a legal ground that said all of those facts about job duties are immaterial because there's one fact and one fact alone that matters, and that is that the class members do not possess certified CPA licenses. As a result of that, the district court said without a CPA license, you don't qualify under A and you're not eligible to qualify under B because you're in the field of accounting. And so the district court read into B a limitation on the profession to say that B was not available to any of the eight professions identified in A. That legal error mandates reversal if the case is reversed and it is clear that we have the right to seek eligibility. We're not asking to be deemed to be exempt. We're asking to be able to put to our proof that we meet the requirements under subsection B by virtue of the job duties of the test associates. And you want to also put to proof that you meet the exemptions under the administrative classification. Yes, Your Honor, we do. Now, I believe that the Court's analysis of the professional exemption could begin and end, and indeed should begin and end, with the plain language of the introductory provision in Section 1A.3, the professional exemption that talks about any employee, and the language of subsections A and B, all of which I think is very clear. But the balance of the section in the professional exemption is absolutely helpful, instructive, and I think, frankly, dispositive. It reinforces the point that unlicensed lawyers, doctors, engineers, and accountants are not subject to some unwritten per se rule that categorically precludes them from eligibility from the professional exemption. And what I'm pointing to here is subsection E of the professional exemption. Subsection E states, and I quote, subparagraph B above, and that's what we move under, subparagraph B above is intended to be construed in accordance with the following provisions of Federal law as they existed as of the date of this wage order. And then it has seven different references to the CFR that follow. Within those expressly incorporated CFR sections are specific references to the possible and of engineers, accountants, and other professionals in 541.308. There's no mention in any of those of a licensure requirement. And 541.308 is particularly important. It is particularly on point. It's quoted in full at page 29 of the blue brief and says, it has been the divisions, this is the Federal Enforcement Division, it has been the division's experience that some employers erroneously believe that anyone employed in the field of accounting, engineering, or other professional fields will qualify for exemption as a professional employee by virtue of such employment. While there are many exempt employees in these fields, the exemption status of individual depends upon his duties and other qualifications. Now, the fact that the Federal regulation speaks to duties and qualifications, not licensure, is certainly a telling point inconsistent with the district court's ruling. But the central point here is much more fundamental and, frankly, dispositive. The IWC in the wage order is construing subsection B, not A and B, only B, by reference to the CFR sites. That undercuts the premise of the plaintiff's argument that subsections A and B are mutually exclusive, a point that they make repeatedly in their brief. There would be no reason for the IWC to have specified that subsection B of the professional exemption should be construed in accordance with sections 540.301D, 541.306, and 541.308 which discuss lawyers, doctors, accountants, and engineers if, as the plaintiff alleges and the district court found, no lawyer, no doctor, no accountant, no engineer, no other professional in a profession identified in A can qualify as exempt under B. Counsel, you've got two minutes left. Your Honor, let me quickly turn to the administrative provision, take one of those minutes, and just indicate there that the Court, again, took a short cut and sidetracked the proof about the duties of the associates, finding that because, as a matter of professional standards and company rules, they would be supervised, that that precluded them from meeting the test of working under only general supervision. The fact of the matter is that supervision is allowed under the wage order to be exempt. What is not allowed is more than general supervision. The line between supervision and more than general supervision is inherently one that the jury has to listen to the evidence and determine. There was no way to rule on that as a matter of law. Thank you, Your Honor. Thank you very much. We will now hear argument from counsel for the plaintiffs. Mr. Frederick. Thank you, Judge Tallman, and may it please the Court. I have a couple of general points to make, and then I want to focus in on the subparagraph E part, because that really does speak directly to the issue. Although counsel omitted a key reference to the Federal regulations that deal specifically with accountants that the IWC struck, and you can see this textually if you go to the red brief, the addendum, page 4, where the full text of subparagraph E is set out, and the specific cross-references to the CFR are made. And this makes very clear that when the IWC was looking at which provisions of Federal law to incorporate, it expressly chose not to incorporate the provision that deals expressly with accountants. So if you look at subparagraph E, it's in the middle of the page. I'm looking at addendum 4 at the very back of our brief, Judge Thompson, where we've laid out the step. Yeah. Okay. In the middle of the page, there are a number at the end of subparagraph E, there are references to various CFR. The second one, 541.301A to D, deals with learned professions. Now, that part of the CFR goes on and has many other subparagraph provisions. The most important one is F, and we've laid out F at the page 38 of the addendum. That one deals specifically with accountants. And in subparagraph F of 541.301, the Feds deal with accountants in precisely the way that Mr. Tomasz would like you to read this wage order, because under the Federal standard, you do look at functionality and you deal with what the unlicensed accountants actually do. And further in that paragraph, it makes very clear that for the most juniorous accountants, even the Feds don't regard the unlicensed accountants as exempt from overtime. But there is a standard in terms of The argument is because they deliberately, the IWC deliberately omitted it, then we must construe that omission as an intention not to regulate. Correct. As an intention that only licensed accountants are entitled to be exempt from the overtime requirement. I gave you the same hypothetical I gave to Mr. Tomasz. How are you going to handle my veterinarian hypothetical? They would come within the learned profession example where you would look at the test for whether they satisfy the requirements of the learned profession. The fact that they're licensed There's no CFR provision that references veterinarians, correct? Correct. And that's why you would look at the normal test under subparagraph B. So if I understand your argument correctly, we have to in essence engage, I guess we would first have to find that there's an ambiguity in the wage order under E. Then we would have to look at the quote-unquote legislative history of the IWC to see that they struck it. Then we would have to interpret the omission of the CFR cross-reference to accountants as something different than the omission of any reference to veterinarians. Have I got that right? Well, that's a secondary way to get there. It's a very convoluted way of doing statutory interpretation. I'm a little uncomfortable kind of going that far out on the limb. Here's why I think that that's not so convoluted. The omissions in the reference in the E paragraph go directly to unlicensed accountants. And that feeds into the long history of the drafting of this wage order, which since 1980 encompassed unlicensed accountants, as the amicus brief of the former commissioners of the IWC made clear. And so this particular omission reflected a long history of treating unlicensed accountants as subject to the normal overtime rules. I guess what's making me uncomfortable is that the Supreme Court is constantly telling us to be wary when we do legislative history analysis of looking at individual statements of senators, congressmen. Here we're looking at former commissioners of the IWC in order to ascertain the meaning of an omission from the wage order. No, Judge Coleman, you're looking at the plain text of the provision. Look at the plain text of the provision. There's just no reference to accounts. That's what you're telling me. That's what I'm saying, that they deliberately omitted incorporating the federal standards for how you interpret the learned profession exemption. And that's what's critical here, because they said we're going to borrow the federal rules in a number of key ways. We choose not to borrow the federal rule with respect to unlicensed accountants. And that is because there had been a long history of not allowing unlicensed accountants to get the benefit of the overtime rules. Now, Judge Coleman, if you decide that that is too convoluted, there is a backup argument that's based on the omissions of what the other side failed to adduce as evidence. And one of those omissions is that in the plain language of B, you cannot be in the learned profession if you are an apprentice. Counsel below conceded that these attest associates who are brand-new accountants, they have no experience, they are brought directly from college, they are doing an apprenticeship as required under the accounting standards. What do we do with the law firm associate who has not yet received the results of the bar exam? They would fall within the requirement as construed by the DLSE of being learned professionals insofar as they have an advanced degree. In our request for judicial notice exhibits X through AA, we lay out the various ways in which the DLSE has construed the learned profession wage order to say if you have an advanced degree, you can qualify to be within the learned profession, even if you do not have a license, so long as you meet the other standards, you're exercising independent discretion, you're engaged in scholarly work and the like. So lawyers can be carved out distinctly from accountants under this analysis by looking both at the way the IWC incorporated or failed to incorporate applicable federal standards. What about the hospital resident? In California, it's my understanding that you cannot be licensed by the State Board of Medicine until you've had a two-year residency at a hospital in the state. That person, too, would arguably fall within a learned profession because most of those have advanced medical degrees, so they would at least get into the analysis of what constitutes a learned profession. Here it's undisputed that 80 percent of the class members have an accounting BA. They do not have advanced degrees. But that's true of engineers. Engineers are often treated differently depending on their functions. And there's no case that I'm aware of that deals with engineers. My point here, Judge Tolman, is that accountants have been looked at differently. And the reason they've been looked at differently is because since 1987, when PricewaterhouseCoopers decided not to pay overtime any more to their unlicensed associates so that they could increase their business, they made an affirmative decision not to obey the overtime rule. And ever since then, they've made an attempt to change the rule through the administrative process, and the IWC rejected their argument in 1989. The problem I continue to come back to is I'm looking at the text of the wage order itself, and I don't see any of that in there. Your argument is that I must come to your conclusion because of omission. And I must look at the history of the manner in which the IWC has handled this issue in order to explain why accountants are omitted. Well, if you look at both — That's a very strange way to do statutory interpretation. Judge Tolman, the Supreme Court often will look at what references are incorporated and which are not. And all we're talking about here is the non-incorporation of particular references. But even if you don't accept that argument, you still have to look at a factual record in which what qualifies to be a learned profession. Even accepting the argument that some unlicensed accountants could be under the learned profession, you still have to look at how that is construed by the DLSC and the IWC. And there is an advanced degree requirement in order to meet the requirement of being of knowledge in an advanced field. And these new accountants have none of that kind of academic qualification. Does the Supreme Court's recent decision in the Mayo Clinic case on residents and whether they are covered by FICA or exempt have any play in this? As a matter of — Interpretation? I don't know. I haven't thought about how the Mayo Clinic case dovetails with this particular analysis. That was a statutory interpretation. Right. What I can say is that the Court has made clear that omissions are treated just as important as actual references, where you're talking about incorporating by reference. But let me turn to the factual arguments, Judge Tolman. If I can't persuade you on my statutory arguments, let me go to the — I would like you to address, because it seems to me that there are a lot of facts that are in dispute here that are difficult to resolve on summary judgment. Not if you focus in on the specific requirements that the learned profession exemption requires. One of them is you've got to be someone of specialized knowledge and not an apprentice. And they've characterized these people as apprentices. They're required under applicable accounting requirements to serve an apprenticeship. We're only talking about the brand newest of the accountants as people that are not within the normal understanding of a learned profession, and they lack the requisite professional advanced degree that has been required for all learned professionals under applicable IWC and DLSE. And there's no dispute about that. So the Court could decide it doesn't need to reach the difficult interpretive questions under the statute and say on this record, PWC failed to induce facts that the brand new associates do not have the advanced degrees that the IWC and the DLSE have required to qualify for the learned professional exemption. But isn't that going to vary from individual to individual among the 2,000 class members? I'm assuming some of these folks may be overqualified for the jobs that they have, but it's the only job they can get in this job market. They have the duty, Your Honor, to induce the facts to qualify for the learned professional. They didn't put the facts in to meet the standards. So as a matter of summary judgment, it's their affirmative defense to show that these people are not qualified or they're qualified for the exemption, and they have failed to meet that standard. As the district judge below held, there are no facts that show that any of these associates are engaged in the management functions for purposes of the administrative exemption. The same is true for the advanced degree and the specialized learning of these people. And I would point out, Judge Coleman, that this is a very odd place for them to draw the line, because unlike some unlicensed associates who might be out for five years and doing much more sophisticated work, we're talking about the newest, least experienced, least knowledgeable accountants fresh out of college, and those are the people where they want to try to draw the line. And they offer no reason to understand why they're treating these associates different from student interns, to whom they do pay the overtime, and they don't give any explanation as to how you differentiate them when they're sitting in the same training classroom and they are looking at the same materials and they're performing the same functions. So the only thing that separates them, as a matter of fact, is that the class members have a B.A., many of which don't even have a B.A. in accounting, and the student interns are still working toward their B.A. So, Judge Coleman, I think the simplest way to resolve this case by affirming is to say that the other side failed to present the facts necessary to get within the learned profession exemption, because it didn't disprove that these are apprentices and it didn't establish how many had advanced degrees, so they don't even qualify for the learned profession. Now, with respect to the administrative exemption, the test is whether these people, these class members, are directly related to management policies or general business operations. At footnote 35 in our brief, page 53, we challenge PWC to show where they adduced any facts as to two of the four requirements for the administrative exemption. One is to show that they were primarily engaged in these functions, and the second is to show how their activities related to management policies. The best that they could do at the time was to show that they were engaged in party planning and so-called connectivity exercises that were morale-building and the like, but the district judge found no evidence that any of these brand-new associates were involved in management policies with respect to PWC. And, of course, because they're performing audit functions, they by definition can't participate in management functions of the client agencies, nor did PWC adduce any evidence that showed that any of these attestations were primarily engaged, which under long-standing California law means more than 50 percent of the time. So I appreciate that there are difficult questions of wage interpretation, statutory interpretation involved in this case. The court does not need to go into those issues if it looks carefully at these references that I've just given you to show that PWC failed to adduce the evidence. Thank you. Thank you very much, Mr. Fredrickson. Mr. Tomash, you have a little more than a minute remaining for rebuttal. Thank you, Your Honor. The debate here is clearly between what is in the wage order, which is what we rely on, and what is not in the wage order, as between those two positions we clearly have the legally stronger argument. The United States Supreme Court made it absolutely clear in Pension Benefit Guarantee Court v. LTV that legislative inaction lacks persuasive significance because there are several possible explanations for inaction. This Court has said the same thing in United States v. Meek. Secondly, the ---- How about the Mayo Clinic case? The Mayo Clinic case is important, I think, only because the Chief Judge Roberts' ---- Chief Justice Roberts' opinion repeatedly referred to the individuals as professionals. It is recognized that doctors serving their residencies for two to three years before becoming licensed are professionals. They are not paid over time. No doctors in their residencies are clocked in and clocked out, put on assigned meal breaks and assigned rest breaks. It's not the way it works for them or for lawyers or for professional accountants. There is no requirement to an advanced degree. That's simply, flatly wrong. CFR 541301B, incorporated by reference in the wage order at issue, says that the level of advanced knowledge necessary cannot be attained at high school. A B.A. is sufficient. These individuals were ---- did have the requisite training, but those are fact issues that is not the basis for what the district court did. It is ---- if facts are to be argued, they need to be argued following a remand. There was no concession that these are apprentices. They serve an apprentice-like period after graduation with their professional skills, just the same way as the residents in the Mayo Clinic case did, just the same way that first-year associates do. Thank you, counsel. Your time has expired. Unless the panel has any ---- Yeah, I have a question. Do the new recruits, the plaintiff class, was there a point in time when the decision was made to recruit them at a higher salary level and when the overtime was stopped? This regime of paying professional wages, wages that are almost indistinguishable between the associates who are in the class and the next layer above who might have CPAs, has been in effect for decades, Your Honor. Okay. Thank you. Thank you very much. The case just argued is submitted. We appreciate the arguments on both sides. Very well argued.
judges: Tarnow, Thompson, Tallman